```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
WATCH TOWER BIBLE AND TRACT SOCIETY
OF PENNSYLVANIA,

                         Plaintiff,

                              Case No. 21-cv-04155-CS
     -vs-

JOHN DOE, also known as Kevin McFree,

                         Defendant.

------------------------------------x

                              United States Courthouse
                              White Plains, New York

                              March 11, 2022
                              10:00 a.m.

              ** VIA TELECONFERENCE **

B e f o r e:
                              HONORABLE CATHY SEIBEL

                              District Judge



A P P E A R A N C E S:

COWAN, LIEBOWITZ & LATMAN, PC
     Attorneys for Plaintiff
BY:  ERIC SHIMANOFF
     PAUL POLIDORO

FOSTER GARVEY
     Attorneys for Defendant
BY:  PAUL LEVY
     MALCOLM SEYMOUR
```

1    THE DEPUTY CLERK:  Good morning, Judge.  Judge, this
2 matter is Watch Tower Bible and Tract Society of Pennsylvania v.
3 Doe.  We have on the line representing plaintiff, Mr. Eric
4 Shimanoff and Mr. Paul Polidoro, last name is spelled,
5 P-O-L-I-D-O-R-O, and we have on representing the defendant Doe,
6 Mr. Paul Levy, last name, L-E-V-Y, and Mr. Malcolm Seymour,
7 S-E-Y-M-O-U-R, representing defendant.  Our court reporter,
8 Darby, is on, and Andy is on.
9    THE COURT:  All right.  Good morning, everyone.  Let
10 me remind counsel when you speak, please remember to say your
11 last name first.  Please do not say, "This is Eric Shimanoff for
12 plaintiff."  Just say "Shimanoff" so that I know right up front
13 who is speaking, and the court reporter knows up front who is
14 speaking.  If we can't tell, we are going to have to interrupt
15 you, and of course we don't want to do that.  So please remember
16 to say your last name and only your last name first even if you
17 think it's clear from the context who is speaking.  So thank you
18 in advance for that.
19    I understand, Mr. Levy and Mr. Seymour, that you are
20 appearing only for a limited purpose, but I think you should
21 file notices of appearance because otherwise you won't get ECF
22 bounces, unless you want to commit to checking the docket every
23 day.  That's just by way of housekeeping.  Because otherwise,
24 you might miss something.  So I have -- I am sorry.  Go ahead.
25    MR. LEVY:  Levy.  We actually did file notices of

1  appearance saying just making the -- and it may be that we used
2  the wrong event for that purpose.  We only wished to make clear
3  that we are reserving the issues of service and personal
4  jurisdiction, and so we used the limited appearance pro bono
5  event, and it may be that we should have used a separate event
6  in order to avoid the problem to which Your Honor averts.
7            THE COURT:  Yes.  It looks like it because for
8  whatever reason, this docket is still showing defendant as
9  unrepresented.  So maybe you want to just call it a notice of
10 appearance, and you can put the limiting language in it so that
11 you are not, you know, giving up any rights, but this way the
12 system will pick you up as counsel.  I think that event is
13 usually used when somebody is coming in to represent a *pro se*
14 just for discovery or something like that.  So it -- obviously,
15 the computer didn't pick it up.
16           Anyway, I have plaintiff's February 14th letter in
17 which they describe two motions they would like to make:  One
18 for the summons in a pseudonym, and to allow alternative service
19 by email, and then I have defendant's March 4th response; and
20 even though those look like straightforward procedural requests,
21 they are tied up in the legal issue of the effect of Judge
22 Román's ruling because if that's *res judicata* or collateral
23 estoppel, there is no point in proceeding with this lawsuit.
24           As a general matter, you know, I don't really know
25 what authority there is to have a summons which doesn't have the

1  current name.  The rule says -- I don't have it in front of
2  me -- but it says it has to be filled out with the correct name,
3  and to get it, obviously, you have options; one of which -- and
4  by "you" I mean plaintiff -- has options, one of which they've
5  pursued and just failed to get the name.  So I am not sure what
6  authority I would have to issue the summons.
7          I do think -- I took a quick look at the case *Cengage*
8  *Learning* that plaintiffs cite, and it does say that the Hague
9  Convention doesn't apply where you don't have the address.  So I
10 am not particularly concerned about the service.  It seems to me
11 we know that the guy plaintiff wants to sue is at that email,
12 and I probably would allow electronic service if the other
13 hurdles could be surmounted, but I am not sure how they can.
14         Mr. Shimanoff, Mr. Polidoro, wasn't your remedy if you
15 didn't like Judge Román's decision to appeal, as opposed to
16 filing a new lawsuit and trying another judge?
17         MR. SHIMANOFF:  Shimanoff.  Your Honor, obviously,
18 once we received Judge Román's opinion, we considered all our
19 options.  As you may recall, this copyright infringement
20 litigation has been pending for quite some time and was
21 essentially put on hold pending Judge Román's decision.  So just
22 to be clear, this was a previously-filed action that already
23 was, you know, on the docket well before Judge Román issued his
24 opinion.  You know, without getting --
25         THE COURT:  Let me just interrupt you.  I am sorry to

1  interrupt, but I want to make sure I understand.

2           This case was filed in 2021.  The motion before Judge
3  Román -- and I don't know why it took so long -- but I thought
4  that you made that application in 2018, and he decided it in
5  2022.  So yes, this case was filed before he made his decision,
6  but you had made the application well before.

7           MR. SHIMANOFF:  Yes, Your Honor.  Shimanoff.  And
8  unfortunately, we were running up against a statute of
9  limitations deadline, which is three years under the Copyright
10 Act.  So because we did not have an opinion yet from Judge
11 Román, we were compelled to file this suit in order not to give
12 up our right under the statute of limitations.

13          THE COURT:  Right.  But then everybody decided, well,
14 let's wait and see what Judge Román rules, and as I said, you
15 could have appealed that decision rather than coming to me and
16 asking me to disregard it when it sure seems like it's the same
17 issue.

18          MR. SHIMANOFF:  Shimanoff.  Your Honor, I don't think
19 that we dispute it's the same issue.  The question is whether it
20 is collateral estoppel in the current action, and we believe it
21 is not because one of the essential elements of collateral
22 estoppel is missing, which is a full and fair opportunity to
23 litigate on the merits.  The procedure was all done on paper.
24 There were significant issues as to the purpose and nature of
25 the defendant's use of many of the parts of the video, including

1  the green screen music video where there doesn't seem to be any
2  commentary at all other than mocking the fact that there is a
3  green screen because he obtained a purloined copy before it was
4  done.  There was no -- also questions about how Mr. Doe obtained
5  the video.  There were two different stories that were prevented
6  during the briefing.  You know, on a motion to quash there is no
7  opportunity for discovery at all; no opportunity to question in
8  more detail these issues.
9            So, again, we do think that they are two very
10 different procedures, a litigation versus a motion to quash, and
11 therefore, collateral estoppel would not apply.
12           THE COURT:  Why isn't that right, Mr. Levy and Mr.
13 Seymour?
14           MR. LEVY:  I think there are -- Levy.  I think there
15 are two main responses to that argument, but the predicate for
16 -- and I would say neither of the responses I would give are
17 supported by binding authority in this case, but the predicate
18 for the argument is supported by binding authority in this case,
19 and that is that a subpoena ruling can be *res judicata*.  I mean,
20 the Second Circuit has made that clear in cases such as *American*
21 *Tobacco*.  And it's also --
22           THE COURT:  Is it always *res judicata* or --
23           MR. LEVY:  No.  And then you get into an analysis, and
24 their argument -- and there is nonbinding authority holding that
25 a subpoena to identify an anonymous defendant when litigated in

1  a different forum, in that case litigating in state court in
2  California, was *res judicata* in Maine in the main action.  The
3  action in that case for defamation, the subpoena had been
4  quashed in California on the ground that the Doe's speech was
5  protected as a matter of law, and hence, plaintiff's claim could
6  not proceed, and the Maine Supreme Court held that the
7  plaintiff's claim had to be dismissed as *res judicata* because it
8  depended on an issue that was necessary to the decision in the
9  determination.
10          Now that's not binding authority, of course, but I
11 think I would make two points about how the Court should think
12 about the *res judicata* issue in the context of a previous
13 decision on a subpoena.
14          If lack of discovery bars *res judicata* of
15 a determination of a subpoena proceeding, the fact is that
16 subpoena proceedings are generally considered without discovery,
17 and that would mean that subpoena proceedings would never be *res*
18 *judicata*, and that is plainly not the law as the Second Circuit
19 has held that they can be *res judicata*.
20          The second reason is that Judge Román considered the
21 issue of whether Watch Tower needed discovery in order to fully
22 litigate the issue of fair use, which Judge Román decided.  He
23 decided that discovery was not needed, so that sub-issue is also
24 *res judicata* in this case.
25          THE COURT:  That's interesting.

1            MR. SEYMOUR:  Seymour.  Sorry, Your Honor.  Go ahead.
2    I can wait.
3            THE COURT:  Go ahead.
4            MR. SEYMOUR:  Thank you, Your Honor.  Seymour.  As
5    Mr. Levy indicates, this argument that Watch Tower is presenting
6    about requiring discovery, that was fully litigated and briefed
7    in the subpoena proceeding, and again, their remedy, if they
8    disagreed with that decision, would be to appeal it.
9            Now, Judge Román decided that no discovery was
10   necessary by analogizing to a string of cases from the Southern
11   District that have decided fair use at the 12(b)(6) stage, and
12   those cases clearly are decided without the benefit of
13   discovery, but they are final judgments, and they have full
14   preclusive effect.  And the doctrine that has emerged in the
15   Southern District -- and there are now -- at the time of our
16   briefing, there were at least several, and there are probably
17   more cases by now that has emerged -- is that where a side-by-
18   side comparison of the two works is sufficient to determine the
19   issue of fair use, that it can be decided at the 12(b)(6) stage,
20   even though fair use is an affirmative defense.  And this is
21   really an antidote to copyright actions that are clearly
22   oblivious to the issue of fair use, dragging on into discovery,
23   when the Court has everything that it needs in front of it to
24   make that determination, and in this case to preserve First
25   Amendment rights, without dragging the case out to that extent.

1              Now that issue, that capsule issue of fair use is --
2    Judge Román, the standard that he applied was a standard that
3    was not taken from 512(h), DMCA subpoena cases.  It was taken
4    from 12(b)(6) decisions by this very Court; and so too, the
5    principle that a court doesn't need to have discovery before it
6    can decide the fair use issue on a 12(b)(6) motion, that was
7    taken from the 12(b)(6) standard, not the 512(h) context; and so
8    it is exactly the same posture and exactly the same set of
9    principles that the Court would apply if it were evaluating fair
10   use here on a motion to dismiss.
11             And so, you know, there is always some confusion
12   between *res judicata* and claim preclusion.  I think that
13   Mr. Levy is correct that *res judicata* does apply, and a decision
14   on a motion to quash a subpoena can have *res judicata* effect,
15   but specifically have *res judicata* effect over -- at least in
16   this Circuit and in this District -- subsequent motion --
17   subsequent motions to quash subpoenas that seek the same or
18   similar information.
19             Mr. Levy is also referencing authority outside of this
20   District, which he has acknowledged is not controlling, but a
21   decision on a motion to quash may have *res judicata* effect over
22   a plenary action like this over a subsequent infringement claim;
23   but even if it doesn't, in the Southern District, issue
24   preclusion very clearly applies.
25             So claim preclusion, if claim preclusion doesn't apply

1  to this infringement action, Judge Román evaluated, decided fair
2  use and decided the argument that discovery was necessary before
3  he could decide fair use all within the context of his decision.
4  Both of those issues were fully litigated.  We provided the
5  Court with a briefing, and what they are looking for here is a
6  second bite at the apple.  They don't want to go up to the
7  Second Circuit.  If the Second Circuit were to decide these
8  issues against them, that would become controlling at a
9  potentially larger scale, and we certainly found that to be a
10 curious decision on their part.  We don't doubt that they
11 considered the decision, but as our pre-conference letter has
12 indicated, it is one of multiple questions that we have about
13 what their overall strategy is here, and we are not certain why
14 they decided to reactivate this case when we thought that all
15 the parties were in agreement.  And I was counsel to Mr. McFree
16 in that 512(h) proceeding.  We thought the Court thought this
17 way, too; that we needed to wait to see what Judge Román was
18 going to do because it could be outcome-determinative in this
19 case, and it certainly appears to be.
20         THE COURT:  That's what I thought the parties thought
21 as well.  Look, I think you're probably right.  I guess as a
22 procedural matter I am not a hundred percent clear on how the
23 fact that you may be able to win on the merits necessarily
24 drives my decision on whether to allow the clerk to issue a John
25 Doe summons or to allow alternative service.  I assume your

1  point is, it would just be a waste of time because even if I
2  allow both of those things, Mr. Doe would make a motion to
3  dismiss and would prevail.
4           MR. SEYMOUR:  Seymour.  I am sure Mr. Levy actually
5  is -- he is the expert on this -- but this is the second point
6  that is made in our pre-conference -- Mr. Levy's pre-conference
7  statement, which is generally, the process is not to allow a Doe
8  summons to issue.  It is to permit -- the plaintiff would
9  ordinarily move for early discovery seeking to identify the name
10 of the Doe defendant so that that could be put on the summons,
11 and the summons could be served.
12          And that does seem to be a lot of wasted effort here
13 when it's clear that if there is a motion for that discovery,
14 one of the threshold issues that needs to be considered under
15 this *Arista Records* case is whether there is a *prima facie* claim
16 for infringement, and Judge Román has held that there isn't; and
17 that would be outcome-determinative of that motion if -- also
18 *res judicata* would directly control such a motion because
19 that -- there is an equivalence there in terms of the specific
20 claims; that you would have claim preclusion and issue
21 preclusion, and that's how Mr. Levy has concluded in our letter,
22 which is if the Court wants to take that next step, we are
23 prepared to take it and to make all of these arguments, but it
24 does seem that we are doing a lot of extra work just to
25 essentially, you know, require compliance with the decision that

1  this Court's already made, and it seems -- it seems unnecessary.
2          THE COURT:  And how do you think procedurally this
3  should go?  Do you think they should make an application for
4  early discovery, and you will oppose it, and I will decide it
5  and --
6          MR. LEVY:  Levy.
7          THE COURT:  Go ahead.
8          MR. LEVY:  I think, actually, we would probably not
9  die -- succeed or die on the early discovery motion hill.  I
10 think we would want to file a motion to quash their proposed
11 subpoena, and the difference is significant because while they
12 can appeal a loss on early discovery, on a motion for leave to
13 take early discovery it is not clear that we could appeal a loss
14 on that motion, but *Arista Records* makes clear that we could
15 appeal a loss on a motion to quash because the subpoena would be
16 to a third party, and you could not expect Google, YouTube to go
17 into contempt if you were to rule against us on the claim-
18 precluding issue in the context of early discovery.
19         So it is actually my -- it would be my plan to take no
20 position on the motion for leave to take early discovery, but to
21 wait to move to quash the subpoena, which presents then an
22 identical issue to the one that was before Judge Román.
23         THE COURT:  It sure sounds like it.  I mean, this is,
24 you know, procedurally, you know, indirect paths, but it seems
25 like no matter what path we take, we are getting back to the

1  exact same issue that was already decided by Judge Román.

2         So, I mean, I don't know that I have the authority to
3  say to plaintiff, no, you cannot make your motion to direct the
4  clerk to issue a John Doe summons and for alternative service,
5  but it's probably going to be denied, and then you will make a
6  motion for early discovery, and that will probably be granted,
7  and then they will make a motion to quash, and we will be right
8  back where we were.  Whoever that was, go ahead.

9         MR. SHIMANOFF:  Shimanoff.  Thank you, Your Honor.  I
10 do want to address some of the points that were raised, and I
11 think we all recognize that ultimately there will be some sort
12 of argument on the merits as to whether there is fair use and
13 whether there -- Judge Román's opinion does have either *res*
14 *judicata* or collateral estoppel effect.

15        The purpose of our pre-motion letter and the purpose
16 of our communications with Mr. McFree and his counsel prior to
17 this conference really were to figure out that procedure so that
18 we can have the speedy, just and inexpensive determination of
19 this action in line with Rule 1.  We had asked Mr. McFree on
20 several occasions to waive service.  It would be the easiest
21 thing to do, and then the parties could get to the issues that
22 we have been discussing today; but, unfortunately, you know, we
23 can't put the -- I guess the cart before the horse.  You know,
24 we need to figure out what is procedurally the best way to get
25 there.

1            You know, I think there is authority for Your Honor to
2  order the Court -- or the clerk to issue a summons in the name
3  of John Doe.  I do understand federal rule has its requirements,
4  but I do think again in light of Rule 1 and in light of the
5  Court's inherent authority, it can be accomplished.
6            I also want to point out that this rule that defense
7  counsel cites about requiring early, you know, early third-party
8  discovery in a John Doe case, not one of the cases that are
9  cited in the letter in response to our pre-motion conference,
10 actually stand for that or have anything to do with that.  To
11 the contrary, I believe the Sixth Circuit case actually allowed
12 the case below to go forward where they were considering summary
13 judgment even though they had reversed the determination by the
14 district court that the motion -- that the subpoena should be
15 issued.  So there are mechanisms here.
16           I am also, you know, perplexed by the resistance to
17 just fixing this simple ministerial matter by, again, agreeing
18 to waive service when, you know, Mr. Seymour himself in his
19 motion papers before Judge Román also said in the alternative,
20 that if the motion was not quashed, that John Doe should be
21 allowed to proceed anonymously in any infringement action, and
22 one of the things he agreed to do was accept service on behalf
23 of the defendant so that it wouldn't impede the litigation, but
24 unfortunately, that's where we wound up.
25           So I do agree, there's lots to talk about on the

1  merits here.  There's lots to talk about on the issue of
2  preclusion and claim preclusion.  I am just trying to find the
3  quickest and most efficient way to get there, and I think, you
4  know, I am not sure now, especially that Mr. McFree has two very
5  well-respected counsel appearing on his behalf, we don't just
6  put this to bed by them agreeing to waive service, and then we
7  can move on, and all defenses can be made, including the ones
8  raised today.  We disagree with them, but that's not the purpose
9  of why we've raised this conference.
10          THE COURT:  Well, it seems to me that there's two fast
11 ways to get right to the meat of this controversy.  One is for
12 them to waive service.  The other is for you to make an
13 unopposed motion for early discovery.  You could do it by
14 letter.  I will grant it, and then let them move to quash.
15          Either way, that will get us right to whether Judge
16 Román's decision is *res judicata* or collateral estoppel, but
17 the -- you know, it seems to me whether it's on a 12(b)(6)
18 motion because they've waived service or whether it's on a
19 motion to quash really doesn't make a big difference, and the
20 motion to quash is probably faster because if they were to waive
21 service, which I can't make them do, by the way, then the --
22 then we have, you know, a formal motion and all that.  We could
23 get to a motion to quash, you know, next week.  It seems to me
24 six of one, half dozen of the other.
25          Do you want to say anything, Mr. Levy or Mr. Seymour,

1  about why your client wouldn't just accept service, and then you
2  make a 12(b)(6) motion because you are very confident you would
3  win?
4            MR. SEYMOUR:  Seymour.
5            MR. LEVY:  Levy.  Levy.  Excuse me, Malcolm.
6            MR. SEYMOUR:  No problem.
7            MR. LEVY:  Three reasons:  Reason -- the judicial
8  world has been dealing with the problem of Doe defendants for
9  some 20 years now, and the uniform approach -- Mr. Shimanoff is
10 correct, there is no quote "rule," but the uniform practice in
11 these cases is for the plaintiff to seek early discovery, and
12 then there to be a fight over the subpoena to determine whether
13 the Doe will be identified and therefore be able to receive
14 service and the litigation commence in earnest.
15           And what happened in *Signature Management* is that
16 Mr. Colton, counsel for the Doe in that case, made the judgment
17 that he could not prevail on that issue without going through
18 discovery, and so he recognized that plaintiff had a need for
19 discovery in the situation in that case and decided to proceed
20 having accepted service for the Doe anonymously.
21           In this case, by contrast, we don't think there is a
22 need for discovery, and Judge Román has decided that there
23 isn't.
24           Finally, the quickest and most efficient way for Watch
25 Tower to have gotten what it wants would have been to go to the

1  Second Circuit on the 512(h) subpoena, but they plainly chose
2  not to do that.  And whether it's in litigation before this
3  Court or in litigation before the Second Circuit, it seems to me
4  that's the strategic decision that they are going to have to --
5  they may have to die on that hill.
6              THE COURT:  Well, this is what I think:  I mean, I
7  have a ton of cases brought by -- I don't mean this to sound
8  pejorative -- brought by people who make porn, adult content,
9  and it gets infringed all the time through BitTorrent and
10 similar methods, and they file many, many lawsuits, and all they
11 have is an IP address.  They file the complaint.  They make a
12 motion for expedited discovery.  It's like two pages, a two-page
13 motion, you know, three-page form brief.  I grant it every time,
14 and they get the person's name.  And because, you know, it's
15 porn, I have some built-in protective orders.  And all they have
16 to do, you know, they give notice to John Doe by email, and, you
17 know, in those cases 99 times out of a hundred they settle
18 because John Doe doesn't want it public that he's been stealing
19 porn.  Once in a while somebody moves to quash.  Once in a while
20 a case moves forward, but it's quick, and it seems to me it's
21 efficient and inexpensive.  So that's what we should do here.
22             Plaintiff should move for expedited discovery.  I will
23 grant it, and then Mr. Doe can move to quash, and that will
24 quickly tee up the issue, which is whether or not Judge Román's
25 decision should carry the day here, and one side or the other

```
 1  can then take that to the Second Circuit if they are unhappy.
 2  So I think that makes the most sense.
 3              So I don't -- I don't really care when you do it, but
 4  just so we don't lose track, when can plaintiff make the motion?
 5              MR. SHIMANOFF:  Shimanoff.  Your Honor, obviously, we
 6  need to discuss any change in our current plan of procedure with
 7  our clients.  You know, I can't speak on their behalf.
 8              You know, I do want to state for the record there's
 9  been a lot of implication here that somehow Watch Tower is
10  playing -- you know, engaging in procedural fencing or trying to
11  game the system.  I have heard phrases "second bite at the
12  apple," "die on a hill," you know, all of these colloquialisms,
13  but, you know, just for the record, Watch Tower is an
14  organization that relies primarily for funding on donation from
15  Jehovah's Witnesses, and they don't have significant funds, and
16  they don't have unlimited pro bono counsel.  What they do have
17  to do is think strategically and spend their money wisely,
18  including where they think that, you know, resources will be
19  more effective and obviously cheaper.
20              So while, obviously, I can't go into my internal
21  discussions with my client, as those are privileged, I just want
22  to address, you know, the implications here that somehow Watch
23  Tower is engaging in any wrongdoing because there are
24  significant economic motivations.  That said --
25              THE COURT:  I don't think --
```

1              MR. SHIMANOFF:  -- we will obviously speak with our
2    clients.
3              THE COURT:  I don't think they are doing anything
4    wrong.  They are doing what clients always do, which is trying
5    to figure out the best strategy, and you know, sometimes they
6    are right, and sometimes it backfires, but I didn't -- I didn't
7    interpret what defense counsel said as suggesting they were
8    doing anything out of the lawyer or client mainstream.  They
9    just, you know, chose a tactic that defense counsel thinks was
10   not the right one.  I don't think they were suggesting
11   misconduct.
12             So that said, how long do you need for the motion, to
13   consult with your client and make the motion?
14             MR. SHIMANOFF:  What I would -- Shimanoff -- what I
15   would suggest, Your Honor, Mr. Polidoro and I could probably
16   speak with our clients -- oh, it's Friday already, excuse me --
17   early next week, and what I would suggest is that we confer with
18   defense counsel on how we plan to proceed, and then we can just
19   briefly update the Court if for some reason they decide to
20   proceed in a different manner or we would just make our letter
21   motion, as you have suggested, shortly thereafter.
22             THE COURT:  All right.  Well --
23             MR. LEVY:  Levy.
24             THE COURT:  -- consult with your client.
25             MR. LEVY:  We are very confident that we could agree

1  on a briefing schedule and the like without the need to involve
2  Your Honor in policing that sort of procedural matter.
3          THE COURT:  Yeah, I was going to say, talk to your
4  client.  Figure out what you are going to do.  Then talk to
5  defense counsel about a briefing schedule and propose it by
6  letter.  It could be the same letter as your discovery motion if
7  that's what you decide to do.
8          MR. SHIMANOFF:  Shimanoff.  So just to clarify, Your
9  Honor, so I am clear, then you are actually asking us in
10 addition to the letter motion seeking third-party discovery
11 before the Rule 26 conference, that we also put in a briefing
12 schedule for the anticipated motion to quash?
13         THE COURT:  Makes sense to me.
14         MR. SHIMANOFF:  Got it.  Thank you.
15         THE COURT:  All right.  All right.  Interesting stuff.
16 Thank you both.  Thank you, all.  I will look for your letter.
17 Let's just, so we don't lose track, let's say by a week from
18 today, and everybody stay well.  Thank you.
19         MR. SHIMANOFF:  Thank you, Your Honor.
20         (Time noted:  10:36 a.m.)
21
22
23
24
25